UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAWRENCE R. HOLLAND, RUTH M. FALCON,
ELLEN J. OHSTROM, ROBERT F. PALERMO,
DENNIS E. STALY, JAMES A. SYKES,
ROBERT L. WARNER, GUY R. PIETRANTONI, and
JOHN R. WAGNER, JR.,

                       Plaintiffs,

                                                                <u>DECISION AND ORDER</u>

                                                                   08-CV-6171L

                  v.

LAWRENCE M. BECKER, PATRICIA M. NAZEMETZ,
and SALLY L. CONKRIGHT, IN THEIR RESPECTIVE
CAPACITIES AS AGENTS OF THE PROFIT SHARING JOINT
ADMINISTRATIVE BOARD, THE PLAN ADMINISTRATOR
OF THE RETIREMENT INCOME GUARANTEE PLAN OF
XEROX CORPORATION and THE XEROGRAPHIC
DIVISION, UNITE HERE, and as PLAN ADMINISTRATORS
OF THE XEROX CORPORATION RETIREMENT INCOME
GUARANTEE PLAN, THE RETIREMENT INCOME
GUARANTEE PLAN OF THE XEROX CORPORATION and
THE XEROGRAPHIC DIVISION, UNITE HERE, THE PROFIT
SHARING JOINT ADMINISTRATIVE BOARD, THE XEROX
CORPORATION RETIREMENT INCOME GUARANTEE
PLAN, GARY BONADONNA, JEANNE RIETZ, ROGER
LADUE, VERDEL LANE, MICHAEL HARREN, ARLYN,
KASTNER, PHILIP HARLOW, MADOE HTUN, JANET GILL
HERNANDEZ, and JOHN DOES 1-25 IN THEIR CAPACITIES
AS AGENTS OF THE PROFIT SHARING JOINT
ADMINISTRATIVE BOARD,

                       Defendants.
_____

       This action was brought by nine current or former employees of Xerox Corporation ("Xerox"), seeking relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C § 1001 *et seq.*, in connection with a dispute over pension benefits. Defendants–the two pension

plans at issue and the plan administrators–have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that it is time-barred.

## BACKGROUND

According to the complaint, each of the nine plaintiffs, while employed by Xerox, was a participant in one of two pension plans. Seven of the plaintiffs were participants in what the parties here refer to as the Textile Workers Plan ("TWP"), and the other two were participants in the Retirement Income Guarantee Plan ("RIGP"). Insofar as the issues presented here are concerned, defendants do not appear to dispute plaintiffs' assertion that the material terms of the two plans are substantially identical. Complaint ¶ 10.

All nine plaintiffs worked for Xerox for a period of time; left Xerox's employ (at dates ranging from 1975 to 1988), at which time they received a lump-sum distribution of their accrued benefits under their respective plans; and were rehired by Xerox, at dates ranging from 1977 to 1993. As of the date of filing of the complaint in this action, three of the plaintiffs had retired from Xerox, and the other six were still active Xerox employees. Dkt. #1-3.

For purposes of deciding the motion to dismiss, it is not necessary to set forth plaintiffs' allegations in great detail, but the gist of their claims is that defendants have wrongly applied a "phantom account" offset to the benefits of retirees who left Xerox and were later rehired. That offset is so called because it involves defendants' deduction from a participant's pension benefits, not only of the amount of the lump sum that the participant received when he or she first left the company, but also a sum representing the hypothetical interest that the lump sum would have accrued had it remained in the pension plan until the employee's retirement at the end of the second period of employment with Xerox.

Plaintiffs' claims here are thus similar to those raised by the plaintiffs in several other actions that have been brought against Xerox in this district, including *Layaou v. Xerox Corp.*, 95-CV-6388, *Frommert v. Conkright*, No. 00-CV-6311, and *Kunsman v. Conkright*, No. 08-CV-6080.[1] Complaint ¶¶ 7, 13. Plaintiffs allege that they are entitled to the benefit of certain decisions in those cases by this Court and by the Court of Appeals for the Second Circuit.

Familiarity with all relevant decisions in those cases is assumed here, but of particular relevance here is the Second Circuit's holding in *Frommert*, 433 F.3d 254 (2d Cir. 2006), that Xerox's phantom account mechanism was not properly added to the RIGP until the issuance of the 1998 summary plan description ("SPD"). The court also held in *Frommert* that it would violate § 204 of ERISA to apply the phantom account to employees rehired by Xerox prior to the issuance of the 1998 SPD. *Id.* at 263.[2]

*Layaou* involved a plaintiff who left Xerox and took a lump-sum distribution in 1983, was rehired in 1987, and left for good following a January 1994 layoff. The Court of Appeals held in that

---

[1] There are three other related actions pending in this Court: *Anderson v. Xerox*, 06-6202; *Testa v. Becker*, 10-CV-6229; and *Clouthier v. Becker*, 08-CV-6441.

[2] On remand in *Frommert*, this Court issued a decision crafting a remedy to address the defendants' ERISA violations, 472 F.Supp.2d 452 (W.D.N.Y. 2007). The Second Circuit affirmed in part and vacated in part, 535 F.3d 111 (2008).

The United States Supreme Court subsequently granted defendants' petition for certiorari, and on April 21, 2010, the Supreme Court reversed the Court of Appeals' 2008 decision in *Frommert*, and remanding for further proceedings. *Conkright v. Frommert*, ___ U.S. ___, 2010 WL 1558979 (2010). The Court's central holding was that "[t]he Court of Appeals erred in holding that the District Court could refuse to defer to the Plan Administrator's interpretation of the Plan on remand[ from the Second Circuit's 2006 decision], simply because the Court of Appeals had found a previous related interpretation by the Administrator to be invalid." 2010 WL 1558979, at *11.

None of those later decisions in *Frommert*, however, have any bearing on the issues before me now, concerning whether plaintiffs' claims in this case are time-barred. Defendants' motion to dismiss is based upon the Second Circuit's findings and conclusions in its 2006 *Frommert* decision, which remain unaffected by the Supreme Court's decision, or any other subsequent events in that case.

case that the SPD in effect at the time that Layaou's benefits were calculated in 1994 was inadequate, because it "failed to provide notice to Layaou and other similarly situated employees that their future benefits would be offset by an appreciated value of their prior lump-sum benefits distributions." 238 F.3d at 210.

In the case at bar, plaintiffs contend that the *Frommert* and *Layaou* decisions apply to all their claims in this action, and that they are entitled to relief by virtue of those decisions. Based on those allegations, plaintiffs have asserted two causes of action. The first alleges that defendants' continued application of the phantom account offset constitutes a violation of ERISA §§ 102, 204(g), and 204(h).[3] Complaint ¶ 79. In the second cause of action, plaintiffs allege that defendants have breached their fiduciary duties as plan administrators. Plaintiffs allege that defendants have violated their duty to truthfully and accurately inform beneficiaries of their rights, and their duty of loyalty to plan beneficiaries. Complaint ¶¶ 81-86.

For relief, plaintiffs seek an order enjoining defendants from continuing to apply the phantom account offset, and directing defendants to recalculate plaintiffs' benefits, without the application of that offset. Plaintiffs also request several other forms of relief, including a declaration that the releases signed by two of the plaintiffs, concerning the application of an offset for prior distributions, are unenforceable. Complaint at 22-23.

Defendants contend that all of plaintiffs' claims are time-barred as a matter of law. This Court has recently addressed similar claims and issues in *Kunsman v. Conkright*, ___ F.Supp.2d ___, 2013 WL 5631027 (W.D.N.Y. Oct. 16, 2013). In that decision–which was filed after the complaint

---

[3]Section 102, 29 U.S.C. § 1022, requires that a summary plan description be furnished to all participants and beneficiaries of an employee benefit plan and that it reasonably apprise participants and beneficiaries of their rights and obligations under the plan. Section 204(g), known as the "anti-cutback" rule, provides in part that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan ... ." 29 U.S.C. § 1054(g)(1). Section 204(h) sets forth notice requirements with respect to certain plan amendments. 29 U.S.C. § 1054(h).

and the parties' motion papers were filed in this case–this Court held that all of the plaintiffs' claims were time-barred, with the exception of one claim for breach of fiduciary duty, based on the defendants' failure to follow certain directives of the Second Circuit in its 2006 *Frommert* decision. *Id.* at *16.

**DISCUSSION**

**I. Limitations Periods under ERISA**

Because ERISA contains no statute of limitations for non-fiduciary claims, such claims are generally subject to the most analogous state statute of limitations. *Guilbert v. Gardner*, 480 F.3d 140, 148-49 (2d Cir. 2007); *Miles v. New York State Teamsters*, 698 F.2d 593, 598 (2d Cir. 1983). In New York, courts typically apply the six-year limitations period for contract actions set forth in N.Y. C.P.L.R. § 213. *See, e.g.*, *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009); *Bilello v. JPMorgan Chase Retirement Plan*, 607 F.Supp.2d 586, 594 (S.D.N.Y. 2009); *Miele v. Pension Plan of New York State Teamsters Conference Pension & Retirement Fund*, 72 F.Supp.2d 88, 98 (E.D.N.Y. 1999). "New York permits contracting parties to shorten a limitations period, however, if the agreement is memorialized in writing." *Burke*, 572 F.3d at 78 (citing C.P.L.R. § 201).

Whichever period applies–statutory or contractual–such claims accrue "when a plan clearly and unequivocally repudiates the plaintiff's claim for benefits and that repudiation is known, or should be known, to the plaintiff." *Carey v. International Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 50 (2d Cir. 1999). That rule applies "regardless of whether the plaintiff has filed a formal application for benefits." *Id.* at 49.

ERISA claims for breach of fiduciary duty are governed by § 413 of ERISA, 29 U.S.C. § 1113, which sets forth a limitations period for breach of fiduciary duty claims of six years from the

date of the last action constituting a part of the breach, or three years from the earliest date on which the plaintiff had actual knowledge of the breach, whichever period ends first. The statute also provides, however, that "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." *Id.*

**II. Whether Plaintiffs' Claims Are Timely in this Action**

**A. First Cause of Action**

Plaintiffs' first cause of action alleges violations of ERISA §§ 102, 204(g), and 204(h).[4] Defendants contend that this claim is untimely, for two reasons.

First, in their initial motion papers, defendants contend that "[u]nder the terms of the RIGP, incorporated by referenced [sic] in the Complaint ..., the contractual limitations period [for filing a claim for benefits under § 502(a)(1)(B)] is one year," and that "[s]uch time limitation was adequately disclosed to plaintiffs in the 1998 SPD." Def. Mem. of Law (Dkt. #3-3) at 6. Although defendants reference an exhibit and page number in support of those assertion, *id.*, it does not appear that either side has in fact submitted a copy of the RIGP or the 1998 SPD in this action. Those documents have been submitted in *Frommert* and other related cases in this Court, however, *see*, *e.g.*, *Frommert*, 00-CV-6311, Dkt. #96 Ex. L, #133-7; *Kunsman*, 08-CV-6080, Dkt. #6-3, and there is no dispute as to the relevant terms of those documents.

---

[4]The complaint's jurisdictional statement also asserts that subject matter jurisdiction in this case is predicated on § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides a cause of action by a plan participant to recover benefits under the terms of the plan. While neither of the separately numbered counts of the complaint expressly references that section, to the extent that the complaint can be read as asserting a claim for benefits under § 502(a)(1)(B), such a non-fiduciary claim is also subject to the six-year limitations period of C.P.L.R. § 213. *See Burke*, 572 F.3d at 78.

Defendants also argue that even if the six-year period of C.P.L.R. § 213 applies, plaintiffs' claims are untimely. Again, defendants state that plaintiffs' claims accrued in 1998, nearly ten years before they commenced this action.

In its 2006 decision in *Frommert*, the Second Circuit made it very clear that the 1998 SPD adequately notified plan participants of the phantom account and how it worked. The court stated that "the details of the phantom account offset functions were set out in full in the 1998 Summary Plan Description ('SPD'). ... The SPD also explained in some detail the mechanics of the three-step process by which the phantom account is factored into benefit calculations." 433 F.3d at 260. Later in that decision, the court stated, "the 1998 SPD amended the text of the Plan to include the phantom account and comparative methodology by fully setting out how they are used to calculate rehired employees' benefits. Indeed, the plaintiffs agreed ... that the 1998 SPD adequately describes the offset procedure." *Id.* at 269.

As this Court stated in its recent *Kunsman* decision, "it is difficult to see how the 1998 SPD could be viewed as anything other than a clear repudiation of plaintiffs' claims that the phantom account should not have been applied to them. That SPD made it quite clear that benefits would be reduced based on the hypothetical growth of the employee's prior lump-sum distribution." ___ F.Supp.2d at ___, 2013 WL 5631027, at *4.

For essentially the reasons stated in *Kunsman*, I find that plaintiffs' § 1132(a)(1)(B) claims are time-barred. Those claims accrued not when the Second Circuit issued its 2006 decision, or when plaintiffs' administrative claims were finally denied, but when the 1998 SPD was issued. That document made it abundantly clear how the phantom account offset works, and that SPD effectively amended the plan. *Frommert*, 433 F.3d at 262, 263. If plaintiffs objected to that offset, their time to challenge it began to run then. Plaintiffs were not free to sit on the sidelines while other plan

participants brought a legal challenge in *Frommert*, and, after those other employees won a victory in court, belatedly jump into the fray.

Nor could plaintiffs unilaterally extend their limitations period by filing administrative claims years after they were put on notice of the operation of the phantom account. *See Kunsman*, 2013 WL 5631027, at *6 (plaintiff's argument that his claim for benefits did not accrue until his administrative appeal was denied "is foreclosed by the Second Circuit's holding in *Carey* that 'a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits'") (citing *Carey*, 201 F.3d at 49). To hold otherwise "would ... render the statute of limitation meaningless: Any employee who had pursued his claim, albeit informally, to a final resolution within the plan, but had failed thereafter to sue within the limitation period, could nevertheless revive his stale claim merely by filing a formal application." *Carey*, 201 F.3d at 49.

The court in *Carey* thus made it plain that what triggers the limitations period is not the conclusion of a formal administrative process, but the administrator's clear repudiation of the plan participant's claim to the benefits at issue. In the case at bar, that occurred in 1998, when the SPD set forth in detail the operation and effects of the phantom account offset. *See Hakim v. Accenture United States Pension Plan*, 656 F.Supp.2d 801, 820 (N.D.Ill. 2009) ("Courts have held that even where a beneficiary does not receive direct notice of a Plan amendment, a clear description in the SPD may put Plan beneficiaries on notice of the plan's terms, including its clear repudiation of a claim for benefits") (internal quotes and alterations omitted). *See also Bilello v. JPMorgan Chase Retirement Plan*, 607 F.Supp.2d 586, 594 (S.D.N.Y. 2009) (whether repudiation was "clear" and "made known" to beneficiaries could appropriately be addressed on motion to dismiss, based on documents referenced in complaint, where statute of limitations defense appeared on the face of the complaint, "the majority of whose allegations concern events occurring more than six years ago").

Plaintiffs, then, had no later than 2004 to commence an action under § 502(a)(1)(B). Since they failed to do so, their claim must be dismissed as untimely. *See*, *e.g.*, *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents*, 450 F.Supp.2d 331, 333 (S.D.N.Y. 2006) (limitations period ran from effective date of plan amendment that repudiated participants' pre-amendment entitlement to benefits, where participants had received SPD that "unequivocally repudiated" a participant's entitlement to pre-amendment benefits by "plainly and accurately" communicating the plan terms and distinguishing between pre- and post-amendment benefits), *aff'd*, 285 Fed.Appx. 802 (2d Cir. 2008). *See also Romero v. Allstate Corp.*, 404 F.3d 212, 223 (3d Cir. 2005) (when ERISA plan is amended but the fact that the amendment actually affects a particular employee or group of employees cannot be known until some later event, an employee's non-fiduciary cause of action accrues when the employee knows or should know that the amendment brought about a clear repudiation of certain rights that the employee believed he had under the plan).

**B. Plaintiff Holland**

Plaintiff Holland also notes that he filed an administrative claim in February 2001, which was denied the following month, and again on appeal in April 2001. *See* Dkt. #6 Exs. A, B. Holland later joined the *Frommert* action, but this Court dismissed his claims for lack of standing, because as a union member, he was not a participant in, and was not covered by the RIGP, which was the only plan at issue in *Frommert*. *See Frommert*, 472 F.Supp.2d at 466-67. As stated, Holland was covered instead by the TWP.

Although Holland's circumstances thus differ from the other plaintiffs', those differences do not save his claim here. That plaintiff filed a claim against the wrong defendant, relating to the wrong plan, does not toll the limitations period as to a claim against the proper defendant. *See McIntosh v. Boatman's First Nat. Bank of Oklahoma*, 103 F.3d 144 (10th Cir. 1996) (plaintiff's

attempt to intervene in another case, which was denied for lack of standing, did not toll plaintiff's statutory filing period) (unreported case); New *Jersey Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 CV 8781, 2010 WL 5222127, at *6 (S.D.N.Y. Dec. 22, 2010) ("where a Plaintiff lacks standing--there is no case ... And if there is no case, there can be no tolling") (internal quotation marks omitted). The fact remains that Holland did not commence the instant lawsuit until 2008, some seven years after his administrative claim was denied and nearly ten years after the 1998 SPD was issued. That is too late.

C. **Second Cause of Action**

Plaintiffs' second cause of action, alleging a breach of defendants' fiduciary duty, is likewise time-barred, in all but one respect. To the extent that plaintiffs' claim is based simply upon defendants' application of the phantom account formula to them, or upon some alleged misrepresentations as to the purported justification for the phantom account, or upon a "continuing violation" theory, I find that it is time-barred, for the same reasons stated in *Kunsman*. *See* 2013 WL 5631027, at *7-*9. Plaintiffs had knowledge of any such alleged breach no later than 1998. *Id.*

I also find that "[t]o the extent that plaintiffs' fiduciary-duty claim merely duplicates their claims for benefits [under § 1132(a)(1)(B)], ... it does not state a valid, independent claim." *Id.* at *6. *See Harrison v. Digital Health Plan*, 183 F.3d 1235, 1237 n.1 (11th Cir. 1999) (finding no error in district court's dismissal of plaintiff's claim for breach of fiduciary duty as duplicative of claim for recovery of benefits); *France v. PNC Financial Services Group, Inc.*, No. 12-268, 2013 WL 3279772, at *5 (W.D.Pa. June 26, 2013) ("At bottom, Plaintiff's fiduciary duty claims turn on the purported wrongful denial of benefits, and he seeks money damages on the same basis. The claims, therefore, are duplicative of his benefits claim, and they ... will be dismissed") (citation omitted).

Also as in *Kunsman*, however, I also find that plaintiffs' claim for breach of fiduciary duty is not time-barred, to the extent that it is based on defendants' apparent disregard of the Second Circuit's clear directive in *Frommert* that "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD." *Frommert*, 433 F.3d at 263. The complaint in this case alleges that defendants "continued to apply the phantom account offset, despite the offset having been declared illegal in Frommert 2006 with respect to Xerox employees rehired prior to September 1, 1998," and prior to this Court's statement in its 2007 *Frommert* decision that "[i]t would seem to be beyond dispute ... that use of a 'phantom account' in the manner found unlawful by the Second Circuit decision violates ERISA and cannot be used by any plan. It is presumed that no plan administrator would knowingly violate ERISA." 472 F.Supp.2d at 467.

In *Kunsman*, I stated that "[s]uch a claim could not have arisen prior to the issuance of the Second Circuit's [*Frommert*] decision on January 6, 2006. As to that claim, then, this action, which was filed [in] 2008, is timely, under either the three- or six-year statute of limitations for breach of fiduciary duty claims." 2013 WL 5631027, at *11. The same reasoning applies here. According to the complaint, defendants have continued to apply the phantom account to employees rehired prior to 1998, in direct contravention of the directives of this Court and the Court of Appeals for the Second Circuit.

Plaintiffs may have received notice in 1998 of defendants' use of the phantom account, but they could not have known that, even after that practice was declared unlawful in 2006, defendants would continue to engage in that practice. Defendants' motion to dismiss this claim as time-barred is therefore denied.[5]

---

[5]Though the plan itself contains a one-year statute of limitations, that does not bar plaintiffs' claim for breach of fiduciary duty. The 1998 SPD states that a "participant or beneficiary under the Company's plans must bring any action in state or federal court for the alleged wrongful denial of plan benefits, or for the alleged intentional interference with any ERISA-protected rights that the participant or beneficiary is or may become entitled to, within
(continued...)

**III. Plaintiffs' Current Status**

When this action was commenced, plaintiffs were represented by Robert H. Jaffe, Esq. Mr. Jaffe died in 2009, and his firm, Robert H. Jaffe & Associates, P.A., is apparently no longer in existence.

Since Mr. Jaffe's death, none of the plaintiffs have contacted the Court, nor has any other attorney appeared on their behalf. At this point, then, plaintiffs are unrepresented by counsel.

Under the Local Rules of this district, litigants–whether they are represented by an attorney or proceeding *pro se*–have an obligation to keep the Court and opposing parties apprised at all times of their mailing address or contact information. Under Local Rule of Civil Procedure 5.2(d), a "[f]ailure to do so may result in dismissal of the case with prejudice."

Out of solicitude for plaintiffs' interests, the Court is sending copies of this Decision and Order to plaintiffs' mailing addresses contained within certain exhibits that have been filed in this action. Plaintiffs must, however, take steps to apprise this Court and the defendants if they intend to continue prosecuting this action, and if so, whether they are going to retain counsel or proceed *pro se*. In either case, plaintiffs must ensure that the Court and defendants are kept informed as to plaintiffs' current address. Plaintiffs are hereby advised that if they fail to do so, <u>their claims may be dismissed with prejudice, without a trial</u>.

---

[5](...continued)
one year after the cause of action accrued." 1998 SPD at 73. That language is an apparent reference to ERISA §§ 502(a)(1)(B) and 510, and does not apply to a claim for breach of fiduciary duty under § 502(a)(3). *See Kunsman*, 2013 WL 5631027, at *15 (explaining why plaintiffs' claim for breach of fiduciary duty is not the same as a claim for benefits under § 502(a)(1)(B), even if the relief may ultimately take the form of increased benefits).

In any event, it is not clear on the record before me when this cause of action accrued. It was not the Second Circuit's 2006 decision itself that gave rise to this claim, but rather defendants' alleged refusal to follow that decision. I cannot state, as a matter of law at this point, when that became apparent.

## CONCLUSION

Defendants' motion to dismiss the complaint (Dkt. #3) is granted in part and denied in part. All of plaintiffs' claims, other than their claims for breach of fiduciary duty and for equitable relief based on defendants' failure and refusal to apply to them the directives of the Court of Appeals for the Second Circuit in that court's 2006 decision in *Frommert v. Conkright*, as set forth more fully in the body of this Decision and Order, are dismissed. In all other respects, the motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 28, 2013.